IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────

PAUL O. HUDACEK,

                         Plaintiff,                          OPINION & ORDER

    v.

                                                                      13-cv-795-wmc

LORAM MAINT. OF WAY INC.,

                         Defendant.

───────────────────────────────────────────────

      In this proposed civil action, plaintiff Paul O. Hudacek seeks to sue his former employer, LORAM Maintenance of Way, Inc. ("Loram"), challenging denial of worker's compensation and unfair termination. Hudacek has been granted leave to proceed *in forma pauperis* without any prepayment of fees. The next step is for the court to determine whether Hudacek's proposed lawsuit is: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks money damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Because the applicable statutes of limitations bar Hudacek's claims even assuming everything alleged on the face of the complaint is true, the court must deny him leave to proceed and will dismiss his suit.

ALLEGATIONS OF FACT

      On May 4, 1987, Hudacek was working as a "groundman" for A-cab, hanging stones before the 6:00 track orders.[1] Al Venture was working as the operator. At some point, Hudacek heard over the public address system that A-cab hydraulics were off. Shortly after,

---

[1] Among other railroad track maintenance services, Loram is in the business of offering a rail grinding program to control "the effects of rolling contact fatigue," extend "rail life" and "reduce wear on rolling stock." (*See* http://www.loram.com/services/default.aspx?id=242.) Loram rail grinders "incorporate high power flexible grinding modules" in a multi-car train with an A-cab or B-cab as the lead car depending on the train's direction. (*Id.*)

as Venture started traveling the machine, Hudacek ran to the control cab, shut off the throttle and re-engaged the hydraulics. Had Hudacek not done so, the machine would likely have derailed, causing multiple personal injuries and property damage. Venture proceeded to the pick-up point and began grinding, but supervisor Pat Eischens sensed something was wrong and halted operations. As Eischens suspected, damage had been done to the grinding stones. Venture was removed, and Eischens assumed the controls. No drug or alcohol tests were administered at this point.

The damage to the grinding stones was significant: the quantity that had to be remounted, removed from the catwalk and replaced required more work in an hour than was usually required in a full day of operations. Hudacek tore his knee apart while performing this work, but he received no medical attention until that evening. Instead, Eischens had Hudacek operate B-cab the rest of the day. Eischens also ran the machine at its maximum speed in order to make the daily average mileage and avoid drawing attention from the customer, Burlington Northern Railroad.

Hudacek never received a thank-you for saving the company, nor did he receive worker's compensation until after he was released to return to work.[2] Hudacek flew to Reading, Pennsylvania, on the same day as his release, where he resumed his machine operator position.

During the week that Hudacek's three-month tour of duty was fulfilled, he was due company leave. Nevertheless, Hudacek's supervisor, Ralph Spicer, would not allow Hudacek a day off, not even to get his laundry done, and instead came pounding on his

---

[2] Hudacek at one point appears to call into question whether his worker's compensation was ever filed, but a claim abstract included with his complaint indicates that he was paid a total amount of $1,960.03 in worker's compensation beginning on June 15, 1987. (*See* Compl. Ex. 4 (dkt. #1-1) 6.)

motel room door. A co-worker further told Hudacek at some point that if he did not go to work, Spicer would fire him. Hudacek then jumped out of bed, dressed in filthy work clothes without time for any personal hygiene, and went to work intoxicated. Upon arriving at the machine, Hudacek's work progressed normally.

Sometime that morning, however, Hudacek asked Spicer if he could cook some breakfast in the caboose, where the railroad conductor was stationed, and received permission. Apparently, Hudacek still smelled of alcohol. After tying up that evening, Spicer informed Hudacek that he should call Tom Smith, Director of Rail Grinding Operations. Smith informed Hudacek that he was fired. Hudacek begged to be allowed to go to treatment but was refused any medical assistance for his disease.

Hudacek alleges that the psychological impact of his termination was devastating. He asks that Loram be prosecuted to the full extent of the law "for all criminal actions brought against [him]" and for the injury he received due to Venture's inability to operate the equipment properly on account of drugs or alcohol.

OPINION

Generally, district courts do not take up likely affirmative defenses when conducting pre-service screening, unless the defense "is so plain from the language of the complaint and other documents in the district court's files that it renders the suit frivolous." *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002). Unfortunately for Hudacek, this is such a case.

*First*, Hudacek appears to assert a claim for termination based on an unspecified "disease" that is almost certainly alcoholism. This claim would arise under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, which states

3

that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a). "In order to recover for violations of Title I of the ADA, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the alleged violation (if he does not file an initial charge with a state agency)." *Stewart v. Cnty. of Brown*, 86 F.3d 107, 108 (7th Cir. 1996) (citing 42 U.S.C. § 12117(a)). Failure to file a timely charge bars a subsequent action in federal court. Alternatively, if a charge is timely filed but dismissed by the Commission, the Commission will notify the person aggrieved, who then has ninety days to bring a civil action against the respondent. *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(f)(1)(A).

Hudacek does not claim to have filed a timely charge with the EEOC, nor has he included a right to sue letter. Whether Hudacek filed a charge or not, the present action is time-barred. Hudacek's termination apparently occurred on September 14, 1987, more than 26 years ago. (*See* Compl. Ex. 9 (dkt. #1-1) 11.) If he did not file a charge, the time to do so has long ago passed; if he did, the time to bring a civil action has likewise long since elapsed. Additionally, the alleged termination took place *before* the ADA was even enacted. *See Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 545 (7th Cir. 1995). And the ADA is not retroactive. *Id*. Thus, any claim that Hudacek might have had under Title I of the ADA is clearly time-barred and must be dismissed.

*Second*, reading his complaint liberally, Hudacek also appears to allege that the knee injury he incurred on May 4, 1987, was due to his fellow co-worker's improper operation of equipment, which could give rise to a claim of negligence against Loram via the theory of *respondeat superior*. As an initial matter, such a claim would be barred by workman's

4

compensation laws. *See* Wis. Stat. § 102.03(2); *Johnson v. Honda, Inc.*, 125 F.3d 408, 418 (7th Cir. 1997) ("The Wisconsin Supreme Court has repeatedly held that '§102.03(2) precludes an injured employe[e] from maintaining a negligence action . . . against his or her employer and fellow employe[e].'") (quoting *Byers v. Labor & Indus. Review Comm'n.*, 208 Wis. 2d 388, 401 n. 9, 561 N.W.2d 678 (1997)). Even if not barred, the statute of limitations in personal injury actions under Wis. Stat. § 893.54 is three years, and the accident that Hudacek alleges, like his termination, occurred more than 27 years ago. Therefore, the court must also dismiss this claim, because like Hudacek's ADA claim, any claim for common-law negligence is clearly time-barred.[3]

Since no other viable claim presents itself on the face of the allegations in the complaint or any reasonable inference from those allegations, this lawsuit will be dismissed.[4]

ORDER

IT IS ORDERED that plaintiff Paul O. Hudacek's lawsuit is DISMISSED as time-barred. The clerk of court is directed to close this case.

Entered this 5th day of January, 2015.

BY THE COURT:
/s/

_____
WILLIAM M. CONLEY
District Judge

---

[3] Even if it were not time-barred, the court would also lack subject matter jurisdiction over this claim, since it does not arise under federal law and Hudacek has not pled the requirements for federal diversity jurisdiction.

[4] Hudacek has also filed a number of supplements to his complaint. He appears to allude to a broader conspiracy perpetrated by Loram and refers to a hearing impairment, as well as reiterating the other events described in his complaint. The events in the supplements also appear to have taken place in 1987, however, and so any potential claims arising from those events would be time-barred for the same reasons discussed above.